**In the Matter of Application of Murray DULBERG.**

**Patent Appeal No. 8845.**

United States Court of Customs and Patent Appeals.

Feb. 15, 1973.

Murray Dulberg, pro se.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Fred W. Sherling, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and WATSON, Judge, United States Customs Court, sitting by designation.

WATSON, Judge.*

This is an appeal from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 22–27 in appellant's application [1] entitled "Retractable Lipstick Holder." No claims were allowed. We affirm.

The claimed invention relates to a retractable lipstick holder having snap fastening means for attaching the lipstick

---

\* James L. Watson, Judge, United States Customs Court, sitting by designation.

1. Serial No. 750,695 filed August 6, 1968.

supply to a carrier within the holder. This allows an expended lipstick to be detached and replaced by a new one.

The structure of the lipstick holder can be seen from Figs. 1 and 7–10 set out below:

FIG. 1

FIG. 7

FIG. 8

FIG. 9

FIG. 10

In Fig. 1 there is shown a tubular lipstick holder 10 having a carrier 11 therein for elevating and retracting lipstick supply 15 in cup 14. The actual snap fastening means to which the claims at issue are directed are shown in Figs. 7–10.

Figs. 7 and 8 depict a spring-type snap fastener comprising a stud 71, formed as part of the top of carrier 11, and a sock-

et 70, formed as part of the bottom of cup 14. S-shaped spring arms 50 and 51 (better seen in Fig. 7) are fitted into the base of the cup so that the arms engage cutouts 70a and 70b, respectively. When stud 71 is inserted into socket 70, the spring engages throat 73 of stud 71 in order to hold cup 14 upon carrier 11.

A different snap fastening means is shown in Figs. 9 and 10 comprising a stud 71, again formed as part of the top of carrier 11, and a socket 75 formed as part of cup 14. A split ring 76 (better seen in Fig. 10) of spring wire engages throat 73 of stud 71 in order to hold cup 14 atop carrier 11.

In either embodiment the relative position of stud and socket can be reversed, i. e., the stud can form part of the cup 14 while the socket can form part of carrier 11. In actual use, the expended lipstick can be pulled away from the carrier manually and a new one snapped into place.

All the claims were rejected under 35 U.S.C. § 103. In sustaining the rejection, the board relied upon the following patents [2] cited by the examiner:

| | | |
|---|---|---|
| Appaix (French) | 1,205,370 | February 2, 1960 |
| Schnack | 2,621,786 | December 16, 1952 |
| Cross | 1,288,526 | December 24, 1918 |
| Milano | 1,296,001 | March 4, 1919 |
| Weidmuller | 632,606 | September 5, 1899 |
| Menkin et al. (Menkin) | 1,209,470 | December 19, 1916 |
| Puter et al. (Puter) | 1,313,331 | August 19, 1919 |

Schnack and Appaix relate to lipstick holders wherein the lipstick supply can be detached for replacement. Pertinent figures from each are reproduced below:

FIG. 3.

Schnack

FIG. 5

Appaix

---

2. Only the Appaix patent appears in the record. Appellant submitted copies of the others to the court.

Cross discloses a snap fastener of the type shown in Figs. 7 and 8 of appellant's specification but does not suggest a utility such as that claimed. Milano shows a related snap fastener. The remaining references disclose other snap fasteners. Menkin, for example, shows a snap fastener having a split ring for retaining a stud in a socket.

The examiner summarized his rejection of the claims under 35 U.S.C. § 103 in view of this art as follows:

The claims as presented are lengthy, however the inescapable fact is that they define only the provision of a snap fastener connection between the cup which holds the cosmetic material and the carrier with which it is to cooperate and this is disclosed by the Appaix and Schnack patents. As is evident from the many alternative constructions disclosed it is not critical and is immaterial whether the male member is on the cup or carrier and vice versa or what form the snap fastener is to assume. As disclosed in the secondary references, snap fasteners such as those specifically disclosed by Applicant are notoriously old and well known. It is submitted that the substitution of an old snap fastener for that disclosed by the Appaix and Schnack devices would be obvious to one having only ordinary skill in the art.

In affirming the examiner, the board held:

We are satisfied that this [Appaix] is a disclosure of a detachable lipstick holding cup element secured to a carrier by means of a yieldable latch means. We are also satisfied that such latch means could obviously be constructed in the manner disclosed by such patents as Milano and Cross for example. The broader teachings of these patents involve a readily detachable coupling and it is in this light that we find such patents analogous and pertinent to the instant case.

Moreover, we agree with the Examiner that the Schnack patent also discloses a readily detachable lipstick cup carrying member in which the detachable connection between the cup element and carrier member could be designed to operate in the same manner as the detachable couplings disclosed by Cross and Milano. Spring coils could operate through slots in Schnack's groove 5 in the same manner that they function in grooves in the Cross and Milano devices.

In short, both the examiner and board felt it would be obvious to substitute fastening means known to the prior art, such as those disclosed in Cross and the other secondary references, for those of Appaix and/or Schnack, particularly in view of a statement in Appaix to the effect that the fastening device for the lipstick supply can be "any appropriate means." We have carefully considered all of appellant's arguments to the contrary but we are in full agreement with the board.

Appellant has discussed at length the differences between his claimed invention and the structures disclosed in Appaix and Schnack. He has pointed out what he considers to be defects inherent in those structures. He has argued that patents to the same invention have been granted in countries over the same art as applied here. However, appellant has advanced no sound reasoning as to why one skilled in the art would not be led to substitute any of the several snap fasteners shown in the secondary references for those of Schnack and Appaix if indeed those structures are as defective as he alleges them to be.

Appellant argues that Schnack and Appaix do not disclose readily detachable lipstick supplies. We note, however, that both of these references make it clear that each inventor had such an objective as the basis for his invention. Furthermore, appellant concedes in his brief that those skilled in the art would be familiar with snap fasteners, and Appaix states, with regard to the cup carrying the lipstick supply, that it can be "removably mounted by any appropriate means."

It is clear from the arguments appellant did make that he has confused the standards of novelty required by 35 U.S.C. § 102 with the statutory standard for nonobviousness under 35 U.S.C. § 103. However, we have construed his argument broadly but have not been persuaded that there is reversible error in the board's conclusion that it would have been obvious to substitute the well-known fasteners of the prior art for those of Schnack or Appaix.

 We need not even consider the actions taken in foreign countries with regard to the patentability of this application under our law. The granting of a patent on an "invention" in a foreign country has no relevance to the determination of whether the same "invention" would be obvious within the ambit of § 103 since it is notoriously well known that the standards of patentability vary from country to country. In re Larsen, 292 F.2d 531, 49 CCPA 711 (1961).

The decision of the board is affirmed.

Affirmed.